Good morning and may it please the court. My name is Jim Thur. I represent Kirk Russell Marsh on this appeal. The issue that the court asked a supplemental briefing upon is the interplay between the time deadlines in Rule 4 and the mandate to the trial court that it instructs the defendant on his rights to any appeal under Rule 32. And I believe this is a blank slate of the court this morning. You have admittedly a claims processing rule under Rule 4 case law that explains that it's a mandatory claims processing rule and once invoked by the government there is no discretion. But the cases that deal with that, such as Robinson, Manrique, and Everhart, for example, did not deal with a situation where the trial court had violated its own mandate in instructing the defendant on a particular right, such as we see in Rule 32. And I'll note that when you look at the Supreme Court cases, such as Carlisle, Carlisle cites the Thompson v. INS and Carlisle makes clear that it's leaving open the issue of if a court error is the type of unique circumstance that would excuse a mandatory claims processing rule. Justice Ginsburg in Carlisle talked about that as a sharply honed exception to a claims processing rule. So that's what we have here. Now, I don't think there is any dispute that the trial court's failure to advise of a 32J right is error. If you look at Figueroa, Justice Kennedy had, looking at former 32A2, of course that's before the 1994 amendments, he points out that it's undisputed that a Rule 32 failure was error. And they went on to apply a harmlessness analysis based on that Rule 32 error. The government did present some additional authority support in the Nutraceutical case. I would note in Nutraceutical in its footnote 7, it points out, citing Carlisle and Thompson, that they're not reaching the issue of whether there was an exception to a mandatory claims processing rule because of a court error. Although they don't say court error, right? And this is what concerns me. It seems to me that Carlisle and then the footnote in Lambert, they seem to be talking about something more, these unique circumstances where there's been almost an assurance by the district court, like cases where the district court grants an extension it wasn't allowed to grant. And so in reliance on that kind of affirmative assurance, you're late in filing a document. I didn't understand them really to be, I understood what they were reserving to be a slightly narrower category, this kind of affirmative assurance by the district court. I know you're good. I agree, Your Honor, that the facts we have here are not of the same ilk that you had, where you had the court, for example, in Thompson, affirmatively establishing that you're okay, that it was filed. But I don't think it would be appropriate to read Carlisle and Thompson as narrowly as requiring affirmative action by the court, only because I think it's the obverse of the coin. Rule 32J is quite clear as to what the court must do. And by not announcing to Mr. Marsh that sentencing, the right that he had to appeal, the court's error is equivalent to the court's error, in my view, to what occurred in Thompson and that Carlisle was talking about, and also the Harris case. I mean, even under normal sort of equitable tolling doctrine, we do sometimes draw a distinction where we would say, look, nobody informed you, but you have to exercise due diligence and go find out about your own rights. Whereas when a district court actually tells you affirmatively, you are welcome to file with me 30 days from now, that is the kind of distinction we draw, even under normal equitable tolling. And what the court seems to have in mind here is an even narrower exception. Yes, Your Honor, I understand that point. I do think it's important to differentiate between two things here, though. Equitable tolling on one side, the other is whether this sharply honed exception is not an equitable tolling. I agree, but it seems like it's at a higher level. Like, even if you could get equitable tolling, you might not qualify for this exception, which seems to be, well, in Lambert, they say that you can't get equitable tolling, but we're holding open the idea that there might still be this narrow exception. So it seems to require something even more than you would need for equitable tolling. Your Honor, I didn't read the case that way. I didn't read the sharply honed exception referenced by Justice Ginsburg as being harder to obtain than equitable tolling. Well, I guess I'm talking about the Lambert case where they say it's a different rule, 23-F or whatever it is, seeking permission for an interlocutory appeal on a class certification decision. That there, equitable tolling does not apply. Satisfying the standard for equitable tolling will not excuse your failure to miss that deadline. But then there's a footnote saying, in truly exceptional circumstances, like where the district court affirmatively misleads you, that might be different. Yes, Your Honor. I read that, to me, that in the New Jersey Suitable v. Lambert case, they were saying, we reject the equitable tolling by citing the Carlisle, and Carlisle was dealing with the claims processing rule case. They were saying, we're not even going to reach this sharply honed exception. In Lambert, because we have no evidence of the court doing anything that prevented the individual from understanding his rights. I saw that as a different analysis, that they were ignoring the equitable tolling issue, saying that would not apply here under Rule 23. But we're not even going to reach this exception to a mandatory claims processing rule, because we have no evidence in the record that we have anything that the court did do or failed to do that deprived the individual of notice of his rights. So we have error, we have two different rules, two different mandates, one placed on the defendant, one placed on the trial court, and the question is how to reconcile these. And I think that when you look at Carlisle, citing Thompson and Harris, what you have is, you have this exception, and the question becomes, is there a remedy for it? Under the governor's position here, one or two things can happen with the Rule 32J bylaws. One, you go ahead and appeal anyway, in which case it's harmless. Two, you don't appeal anyway within the time frame, and there's no recourse for the trial court's authority to advise under Rule 32J. I don't think that should be the answer this court arrives to. There should be a remedy to an offendant. What about a motion to vacate under Rule 2255? Well, I'm sure that's coming, Your Honor. So there is a remedy. There is a recourse. But the Rule 2255 is going to have to go back to an ineffective assistance of counsel argument that counsel didn't advise the defendant of his right to appeal. It will have nothing to do whether the trial court violated Rule 32J. Right, and put it back on someone else, not the court. Exactly, Your Honor. And then it becomes, a Strickland test obviously is different than what I'm proposing to the court here. So the defendant would be faced with meeting Strickland for ineffective assistance, as opposed, and the trial court's failure to give the advisement would be irrelevant, frankly, to that analysis. So I agree, Your Honor, that there is a potential remedy for the conviction and sentence, but it doesn't address the error that occurred at the trial court. I'm sorry. I feel like this is going to be a dumb question. But just explain to me why under 2255 it couldn't just be based on the 32J error itself. If you could show it were prejudicial. I don't know the answer to that, Your Honor. It should have been raised on direct appeal. That's one reason. Thank you, Your Honor, for rescuing me from that one. That's why. How could it be raised on direct appeal? If the question is no one notified you of your right to appeal and so you didn't appeal, how could you possibly have raised that on direct appeal? I feel like we wouldn't require you to have raised it on direct appeal, but maybe that would just be if I were sitting on the panel, so I don't know. But this doesn't seem like the kind of thing you can default by not raising it on direct appeal because the whole point of your claim is no one told me, the judge didn't tell me I could appeal, so I didn't know I could appeal. How could you raise that on direct appeal? Well, I think the tenor of your question, Your Honor, undercuts the government's position here because they're saying that you have to raise it on direct appeal, but if you don't raise it on direct appeal. And I think the government's wrong about that. I'm glad to hear that. Okay. So hypothetically, assume the government's wrong about that, then could you just come in under 2255 and say there was a Rule 32J error and it was prejudicial and so I want relief? I don't see why not. But maybe it's so complicated and it's quite possible there's something else I'm overlooking. Your Honor, I'm afraid I don't have a good answer for you. Okay. I guess one thing, the constitutional violation won't be the constitutional violation, I suppose. If the court didn't do something in that regard. We know the Sixth Amendment violation would occur. But if it deprived you, that's why you'd have to show prejudice. Right. But anyway, okay. Sorry. My concern there, Your Honor, is that there is case law saying that the right to appeal in a criminal case is not constitutional. I know. Right. And you're in civil. And you're also in civil setting. But go ahead. Go ahead. Sorry. Go ahead. Thank you, Your Honor. So that raises the issue then of how is this court to address the situation that we have for us. I would note that in unpublished opinions in Wilson and Ressler, the court looked at this through a harmless error analysis. I also note that Figueroa, the Supreme Court case, looked at it as well through a harmless error analysis. So we believe that is the proper framework for the court's analysis. But even if the court were to adopt a plain error analysis, we still think you've got a substantial right here. This has been infringed. You have the right to appeal. I would note that Rule 32 doesn't have the equivalent that Rule 11 has, Rule 11H, that specifies the harmless error analysis issue. So here I think you're squarely within Rule 52. I think that the Wilson and Ressler decisions point towards a harmless error analysis by this court and that that's the analysis the court should adopt in reviewing the issues here on appeal. Now, the last thing would be on the issue of equitable tolling. We can see that the record is very thin in terms of establishing the elements of equitable tolling, in terms of diligent pursuit of his rights, as well as an extraordinary circumstance that's been impeded. Now, we contend that the Rule 32J violation is the extraordinary circumstance contemplated by the PACE test cited in Holland. The diligent pursuit issue, we think, is not developed in the record, but we believe the appropriate remedy, should the court determine that equitable tolling may be available, would be to remand for an evidentiary hearing to develop that record on the issue of whether Mr. Morris would have that right. Under Lambert, can you tell me how we could say that equitable tolling applies here under Lambert? Well, Your Honor, in Lambert, you did not have the extraordinary circumstance. No, I'm sorry, that equitable tolling is available under this mandatory claims processing rule. It looks like the reasoning of Lambert for why equitable tolling was not available under Rule 23F would apply pretty squarely to this case as well. Well, Your Honor, I think if you look at Contract, which is the 2004 case involving the bankruptcy rules, there, they specifically noted that they were not reaching the issue of equitable tolling. And that was, again, a mandatory claims processing rule. Not just because it's a mandatory claims processing rule, but I read Lambert to say, look, you look at the text of the particular rules in question to see whether they leave room for equitable tolling. And I thought for the exact same reason 23F didn't, it looked like Rule 4 didn't either, because I'm going to get my numbers wrong. But the court looked over to that general rule about extensions and says, look, you can get extensions in all but two specific circumstances. One of them is 23F, and the other one is Rule 4. And so it just seemed like the same reasoning would apply here. If there's a reason you think our hands are not tied by Lambert in terms of holding that equitable tolling might apply to Rule 4 deadlines, I would like to hear it. Your Honor, my only answer to that question is I can see that the timelines under the Federal Rules of Development Procedure, it's stated throughout as the government has put forward in their brief. I do think that the cases such as Lambert and the others the government cites, none of them dealt with a trial court violating its own mandate to advise an offender. And that is the reason that I believe that the equitable tolling issue should not be foreclosed by Lambert. But in Lambert also, they were dealing with something where it was a petition for admission to appeal. Well, it was a class certification decision, Your Honor, under Rule 23. They had to get a certificate. So it was, it's a different context definitely. Right, in the context where in terms of, but here we're dealing with Rule 32 where it's a mandatory rule, but the court's required to do so. And that is our only basis, Your Honor, to question the applicability of Lambert in this context on the unavailability of equitable tolling for a Rule 4 notice of appeal. I see my time has expired, Your Honor. If the court has no further questions, I will sit down. Thank you, Counsel. Counsel. Grano. Good morning, Your Honors. I'd like to jump first to the equitable tolling, because I think it's the cleanest issue in the case, and then discuss a little bit more about Thompson and Carlyle and what the exceptions for being misled by the district court is for. So on equitable tolling, I think the key portion is where the Supreme Court looked at Rule 26b and said the court has no discretion to extend the time for two types of notices of appeal. A notice of appeal is provided in Rule 4 and a permission to appeal request for Rule 23 passed. I think that makes equitable tolling as a general doctrine unavailable after Lambert. The carve-out that Lambert left in footnote 7 when an individual is misled by a district court is a very narrow exception, as Judge Harris pointed out. This comes from two cases, Thompson v. INS and Harris-Trucking from the 1960s, where, as the court pointed out, there was an affirmative act to file in motion after judgment or to suspend judgment. The court said it was timely filed, ruled on, and they then took a quote-unquote timely appeal after that. And the Supreme Court said, well, you were wrong on the untimeliness aspect of your initial proceeding, but because you relied on the district court ruling, we're going to let that go. Contrary to what my friend Mr. Thur has said, the Supreme Court has actually construed that rule extremely narrowly to require those two steps. In Osterneck v. Ernst & Winney, a case from 1989, the Supreme Court held that the rule applies only when a party has performed an act which, if properly done, would postpone the deadline for appeal and has received specific assurance by a judicial officer that this act has been properly done. So under those two elements, which are clearly not implicated in this case, those would be the only exceptions under which the Thompson rule would still apply. And that's actually precisely what Justice Ginsburg pointed out for Carlyle concurrence. She said, these exist where there has been assurance by a judicial officer, but where it's simply a failure to follow the rules in the absence of that judicial assurance, we don't allow any relief from the timeliness requirement. Because that's the opinion where she says it's really almost an estoppel theory, right? That, like, the judge ruled you it was on time, and so you were kind of a stop from saying it wasn't. Yes, Your Honor. I think what's important to note is that the reasoning of Harris and Thompson is not entirely clear, and I think it's an open question whether it survived Supreme Court decisions that have come since then. The Supreme Court in Carlyle specifically held that there is no inherent supervisory authority in the federal courts to depart from the plain text of the rules, and I'm not sure what the rule in Harris and Thompson is, other than an exercise of inherent supervisory authority. So I think the fact that Lambert says we haven't reached this yet doesn't necessarily mean that the exception still exists. I think as these issues have come up, the Supreme Court has systematically said you cannot contradict the plain text of the rules. To go to the point about whether or not there's an effective remedy, I do want to correct. The government does not contend that this would not be cognizable in a 2255 proceeding. In fact, we think that's precisely the mechanism in which this could be brought. This Court has repeatedly recognized with ineffective assistance of counsel claims that have deprived the defendant of his right to appeal, the remedy is to vacate and reenter the judgment and restart the clock, essentially. And we think in an appropriate 2255 proceeding where the defendant can show prejudice, that would be the remedy that he would be able to get and then would take a direct appeal from the judgment. Can you just say again what you said at the beginning, that we've consistently held that in what context? In the context of ineffective assistance of counsel claims where counsel has been constitutionally deficient in either failing to comply with a defendant's request to appeal or was constitutionally deficient for not discussing appeal, the Court has said when we find that deficiency and prejudice, the district court simply vacates the lower judgment and reenters it and restarts the clock. That's not this case, though. The ineffectiveness is the Court. I agree, Your Honor. I think this would be, as Judge Harris said earlier, the core of the claim would be this was a Rule 32 violation, and because I can show prejudice from it in collateral proceedings, that would then get into relief. We do think there would still be a prejudice requirement. Right, but you'd be reasoning by analogy to these ineffective assistance cases, but you wouldn't actually have to bring it as an ineffective assistance claim. Correct, Your Honor. This would be a Rule 32 challenge that my sentence was in violation of law because there was a defect in the sentencing colloquy. Once you show prejudice, then the remedy, which the Court has recognized before, is the vacature and reentry. Do you think the prejudice is automatic? No, I don't, Your Honor. Why not? I think Peguero makes it very clearly not. It's structural error in which prejudice is immediately presumed. So I think in a situation where, for example, the defendant did in fact know he could appeal, as this defendant did because he was advised of his appellate rights, he signed an appellate waiver, he actually knew what his appeal rights were in this context, where a defendant, for example, pled straight to an indictment without an agreement or decided to represent himself and had no counsel and therefore was completely unaware, that would be a different case. But Peguero itself says that where the defendant is aware of his right to appeal and chooses not to exercise it, even though the Court has not advised him of that right, there's no prejudice and no relief on the left. See, the waiver makes it – I feel like it cuts in a lot of different directions here. It gives me some concern, and my concern is that you sit through this colloquy where the district court, as it must, advises you that you've waived all these appeal rights, doesn't tell you that you have a right to appeal. It seems like, you know, these are not skilled lawyers. It seems like you might walk away from that plea agreement and that colloquy thinking, I guess I gave up all my appeal rights. Well, Your Honor, I would point out the defendant was represented by counsel at these stages, so there's sort of an independent question of whether his counsel advised him of all these things. I think the appeal waiver does make this a very complicated case. No, not complicated at all. It's basically what you just argued, that if this Court rules as you suggest, then you're basically saying when there's a plea agreement, a plea waiver, that the Court doesn't have to comply with Rule 32. Because what you said, if all that happened is you're doing behaviors, oh, well, there's no prejudice because you waived it, then you would nullify a mandatory requirement. That is actually the conclusion that the Second and Sixth Circuits have reached, Your Honor, and the reason is because of the difference in language in Rule 32 between the provision where a defendant goes to trial and where a defendant pleads guilty. Where a defendant goes to trial, it says the defendant must be informed of the right to appeal, and when a defendant pleads guilty, it says the District Court must inform the defendant of any right to appeal. And the Second and Sixth Circuits have both said that where you've waived your right to appeal, it's not error for the Court not to instruct you. That's not the law in the Fourth Circuit. Your Honor, this Court has not addressed the issue. And I hope it won't be. And you don't need us to reach that issue, correct? Not at all. That's like an alternative argument? Correct. Well, I guess you do, in a sense, because the whole idea could be an argument that Rule 32 is mandatory. It's amazing how we can find all kinds of excuses for the Court. I mean, okay, it's mandatory. You're supposed to do it. But then we find all kinds of conniptions and theoretical gymnastics to say, well, let's find a way that you don't really have to do it. They didn't do it. It didn't bother you in any way. But no, it is what it is. How difficult is that to tell somebody they have rights to appeal? And it's mandatory. And now you're saying we should adopt, well, you do it. You don't have to do it. Don't do it. There's no pressure because you signed this anyway. Your Honor, I think it's slightly different than that. It's not that the Court is excused from the mandatory obligation to inform the defendant of the right to appeal. It's that in the context of a plea agreement, where the defendant has waived that right and where the language of the rule is, you only have to inform the defendant of any right to appeal after a plea agreement. In that context, where there is no right remaining, the District Court doesn't have to say you have no rights to appeal. I just... I'm sorry. So you're saying that 32J does not apply if there's an appeal waiver? No, Your Honor, not at all. 32J applies. It's just the language of 32J says that when appeal rights have been waived, the Court is not required to instruct as to those waived rights. That would be the place. And that's what it said. That's what 32J said? That's what you said? Yes, Your Honor. But it didn't waive all rights to appeal here. So, Your Honor, yes, in the sense that if a sentence was imposed over the statutory maximum, if there was racial discrimination... That's important, isn't it? Yes, Your Honor, those are important exceptions. I think best practice... And that's why 32J said he needs to be informed of that, notwithstanding that he signed a waiver. That's the whole point. It's not everything is a waiver. It's very important in terms of prosecutorial misconduct, racial, or in other words, inappropriate grounds. Those are important things to protect. So it's not... You just... Well, this... Not any, but those are important. Yes, Your Honor. And I do want to make clear what the government's position here is. That this defendant, given what he waived in the sentence that he received and the fact that there are no concerns about a sentence in excess of the statutory maximum or a denial of the right to counsel, he did not have any remaining appeal rights. I think it would be best practices for district courts, as the Second Circuit has said, to sort of discuss this in as general terms as possible to prompt the conversation with counsel. But even the Second Circuit has been leery of requiring a formulaic response in appeal waiver cases because of the concern between tension between what the court might instruct the defendant and what the defendant has actually agreed to. Am I right that the structure of your argument today makes that an alternative argument? I can disagree with you and believe there was absolutely a 32-J error here and still think that there's a remedy. So if I think that, I can think then that there's a remedy under 2255 if he can show that he was prejudiced because he was misled into thinking he did not have a right to appeal any of the limited things he still could have appealed. And in our circuit, can't he always appeal whether the underlying plea was voluntary and intelligent? Yes, I believe so. So, for instance, if he can come to court on 2255 and show, look, I signed this appeal waiver and everything, but I would have appealed the knowing and voluntariness of my plea, but nobody told me I could and I thought I couldn't, he can prevail. Correct, Your Honor. Yeah, but you already said those things don't exist here already. You've made that conclusion. That's the analysis you're arguing. And here, in this sense, he didn't have any of those things. So there you saw somewhat, I don't mean it disingenuously, telling Judge Harris, oh, no problem. When you get to 2255, we're all on the same page now. No, you'll be right here saying that. You'll be saying the same thing. He had no reason to appeal and therefore was guilty. Yes, Your Honor. It's a melody. It's like a shell game. To be clear, the government's position is that defense would not be entitled to relief. Absolutely. Just say that then. Truth is, it's toast in 2255, whatever, right? Yes, Your Honor. Yeah, that's what I thought it was. But what you're trying to do is reassure me that if I were really worried that someone was misled, that there was prejudice from the failure to comply with 32J. If there were such a case where there was actually prejudice, that that would be rectifiable under 2255. Correct, Your Honor. But also, would it be rectifiable right now just as delayed as justice denied? Would it be justiciable now? No, Your Honor. It wouldn't be. No. Even if it could show that all those things exist right now, 32J would make no difference. Correct, Your Honor. Even if we knew there was prosecutorial misconduct right now, it didn't make any difference that it didn't comply with 32J, right? That's your position? Correct, Your Honor, not on this appeal. This court does not have the ability to hear an untimely appeal, except possibly maybe in the misleading context. What about this, that the fact that the notice was not given to him, the clock never started, and therefore you don't need equitable toll? Because it never started, because until he's told that he has a right to appeal, the clock doesn't even start. So you don't get to equitable toll. Your Honor, I believe the clock for purposes of a notice of appeal starts with entry of judgment, not notification of the right to appeal. Well, but maybe isn't this the extraordinary reason why the clock shouldn't? Because the court did it. It's not something that he did, right? For example, would the clock stop, start, if the court just forgot to put the order in? Your Honor, there actually is a provision of the rules that if the court forgets to enter judgment after a certain number of times, I think it is 180 days, judgment is treated as entered. So I think this speaks to the fact that the Supreme Court in Robinson specifically said So when the appeal would start, when would the appeal stop? It would have the right to appeal for 14 days after the 180-day period. When would they know that? They might not, Your Honor. They're sitting in jail and they're supposed to say, Well, you know, let me see, 178, 179, oh, 180 days. Now my clock starts. That's ridiculous. Your Honor, they could also file it before the end of the 180 days. It seems to me the only way they might not in this circumstance is if their counsel was ineffective. I think when someone is represented by counsel, there's sort of a double backstop here. The court has to forget to tell them that their right to appeal and counsel has to be constitutionally ineffective in advising them as to their right to counsel, and that's why we think this is the appropriate mechanism in 2255 because it allows the district court to make factual findings about what the defendant did and did not know, which is not appropriate for this court to do in an untimely appeal. I think the reasoning of Robinson is that these are all complicated weighing of policy considerations about when we cut off the time to appeal, what exceptions should we make, and that's for the Rules Advisory Committee, not for a court to do on a regular basis. What you're telling me is reminding me of the old joke about, you know, taking a bench trial in a criminal case. It's a slow guilty plea. Your Honor, I think there's some indication that the way to handle this situation is with factual findings in the district court, particularly where we have to make the kind of factual findings like the individual who was a defendant was misled by affirmative action by the district court as necessary for possibly the Thompson exception. I think it's designed for the orderly administration of the process because otherwise it gets to this court, and this court is doing an entire threshold hearing before an appeal and making factual findings that it can't make on an untimely appeal. So the appropriate mechanism is for the defendant to go to the district court either and seek relief from the judgment or in a 2255 proceeding as Justice Ginsburg suggested and then for it to come to the appellate court. If the district court grants relief, vacates the judgment and reenters it, the defendant can then take a direct appeal in the ordinary court, or if the district court denies relief there, he has a recourse from an appeal from 2255 to this court. Unless the court has any further questions, we will rest on our submissions. Thank you, counsel. Thank you. Thank you. May it please the Court, just to respond briefly to my colleague. There is no dispute here, but there was error. There was a 32J error. And there is also no dispute that there was a right to appeal that remained subsequent to the execution of the appeal waiver and the conviction and sentence of Mr. Marsh. How do you define the right to appeal that remained? I'm not disagreeing with you, but how do you see that? He had a right to appeal to this court, Your Honor, on the voluntariness of his plea. And that is what he has purported to do here and seeks the court's ruling upon. Didn't someone file an Anders brief on his behalf saying? I did, Your Honor. Am I wrong that the Anders brief says that there is no ground to challenge the voluntariness of the? Your Honor, I filed the Anders brief. I did ask the court to review the plea colloquy to determine the voluntariness of the plea. I did also ask the court to review the sentence for procedural and substantive reasonableness. You did, okay. The court then directed the supplemental briefing on this issue. Of course, because you filed Anders, that protects the consensus. It's not limited to what you see, but the court itself looks broader than even what you're looking at. That's correct, Your Honor. To address the question you posed to me in my opening on the issue of do you need to have a misleading statement by the judge, by the court, in order to invoke this sharply honed exception that Justice Ginsburg referred to. If you look at the plea colloquy, the court does state to Mr. Marsh, you understand that you have waived your right to appeal in the college. That, I believe, should be enough to cross the threshold for this court to determine whether that sharply honed exception applies. I mean, it is a statement that you have waived your right to appeal. There was no subsequent statement then in sentencing advising him of what his rights to appeal were, whether any right continued. And that should be enough to establish that there must be a remedy for the mandatory claims processing rule on one hand, yet the 32J violation on the other. And I would differ with my colleague on the issue of the Second Circuit. I think when you look at Camposano and Tang, Justice Sotomayor was being quite careful to make sure that trial courts tailored their advisement to satisfy Rule 32J. In other words, yes, you shouldn't, as a trial judge, tell a defendant with a ballot appeal waiver, you can go ahead and appeal your conviction and your sentence, though my sentence is within the statutory maximum. That would lead to confusion. But that, I don't believe that you can take the Second Circuit's case law and construe it to mean that the Second Circuit believes that you can avoid the appeal notification entirely under 32J. And the Sixth Circuit case, the Everard case back from 1998, before Figueroa, I believe, is simply dicked on that question in light of Figueroa and the harmlessness analysis that Figueroa announced. If there are no further questions, I would conclude my argument. All right. Thank you. Thank you. Thank you. Mr. Grano, I note that you are about to go ahead. I'm sorry. Mr. Thower, please come back up. I noticed that you were court appointed. Yes, sir. And I just want to say on behalf of the court, we appreciate that and thank you so much for doing that. We couldn't do our work without counsel like you and others who help us in that regard. So I want to note that. Thank you so much. Thank you. Thank you. Mr. Grano, of course, you're able representation of the United States. We know that as well. We will ask the clerk to adjourn the court. Sign it aye. And then we'll come down and greet counsel.
judges: Roger L. Gregory, Stephanie D. Thacker, Pamela A. Harris